Argued and submitted January 31, affirmed June 4, reconsideration denied August 1,
petition for review denied September 30, 1986 (302 Or 36)

## STATE OF OREGON,
*Respondent,*

*v.*

## STEVEN LARRY FINK,
*Appellant.*

## (J84-1067; CA A35929)

720 P2d 372

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for manufacture of a controlled substance. ORS 475.992. He challenges the trial court's denial of his pretrial motion to suppress evidence that the police seized from his premises pursuant to a search warrant. The issue is whether the affidavit in support of the search warrant adequately established the veracity of an unnamed informant so as to justify the issuance of the warrant. We hold that the results of a polygraph examination and the informant's lack of a criminal record adequately established veracity, and we affirm.

A deputy sheriff submitted the affidavit in support of the search warrant on April 22, 1984. After setting forth his experience in narcotics investigations, particularly those concerning marijuana, and his knowledge concerning the cultivation, sale and use of marijuana, he recited information that a fellow officer had received from two informants:

"That today, I spoke with Sgt. Chirrick of the Douglas County Sheriff's Office, who is in charge of the Investigative Division, and has been the coordinator of 'Operation Sinsemilla' [an aerial observation of marijuana program] for the last three years.

"Sgt. Chirrick told me that on March 30, 1984, he had contact with 'A', who he knows to be truthful, as 'A' has provided information to him in the past which resulted in the arrest and conviction of several persons for the possession of controlled substances.

"Sgt. Chirrick told me that 'A' told him that a Steven Fink was growing marijuana plants in his attic and that 'A' took Sgt. Chirrick to the area of Fink's residence on Hwy 42, and pointed it out. That residence is above described on page 1 of this affidavit.

"Sgt. Chirrick told me that on April 18, 1984, he spoke with 'B', who told him that within the last week, 'B' had observed numerous small marijuana plants, growing under grow lights in the attic of Steven Fink's residence, located on Hwy 42, as described above.

"Sgt. Chirrick told me that 'B' was tested on a polygraph machine regarding said information, and that the test revealed that 'B' was telling the truth. Sgt. Chirrick told me that the test was conducted by O.S.P. Polygrapher, Fred

Acom. Sgt. Chirrick told me he made a criminal history check on 'B' and found that 'B' has no criminal record."

He then stated that Chirrick had told him that he had driven to the location described by B and that it was the same location that A had pointed out to him. The remainder of the affidavit described the affiant's own investigation of where defendant resided, which corroborated the informants' information on that matter.

Defendant argues that the affidavit was deficient under ORS 133.545(3) (now ORS 133.545(4)) and Article I, section 9, of the Oregon Constitution.[1] Both provisions are to be interpreted consistently with *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). *State v. Souders,* 74 Or App 123, 128, 700 P2d 1050, *rev den* 300 Or 112 (1985). The Oregon Supreme Court has restated the "two-pronged test" of *Aguilar* and *Spinelli* for evaluating the sufficiency of affidavits relying on information from unnamed informants:

"1.   The affidavit must set forth [the] informant's 'basis of knowledge.'

"2.   The affidavit must set forth facts showing the informant's 'veracity,' either by showing:

"a.   The informant is credible, or

"b.   That his information is reliable." *State v. Montigue,* 288 Or 359, 362, 605 P2d 656, *cert den* 449 US 846 (1980). (Footnote omitted.)

The affidavit in question recites double hearsay. We must evaluate each layer of hearsay to determine whether that hearsay may be used in the determination of probable cause.

---

[1] *Former* ORS 133.545(3) provided:

"* * * If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

Or Const Art I, § 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.—"

*State v. Henderson*, 40 Or App 27, 594 P2d 419 (1979). The first layer is what Chirrick related to the affiant. Assuming that it is appropriate to use the *Aguilar/Spinelli* test to evaluate the statements of a fellow police officer, his statements pass that test. The source of his information was his own conversations with A and B, which satisfies the "basis of knowledge" prong of the *Aguilar/Spinelli* test. His veracity is established by his status as a named informant and a police officer. *State v. Henderson, supra,* 40 Or App at 31.

██ The next layer is what A and B told Chirrick. The parties agree that the information from A did not satisfy the *Aguilar/Spinelli* requirements; although A's veracity was established by past reliability, there was no showing of A's basis of knowledge. Thus, the sufficiency of the affidavit depends on whether the information from B satisfies those requirements. Defendant concedes that B's personal observation of the marijuana satisfies the "basis of knowledge" requirement. The remaining question is whether the affidavit sufficiently establishes B's veracity. The state argues that (1) the results of the polygraph test, (2) B's lack of a criminal record and (3) A's corroborating statements, establish B's veracity. We hold that the first two factors sufficiently do so.

██ The question of whether a magistrate may properly consider the results of a polygraph test in determining whether an informant is credible is one of first impression in this state.[2] In *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), the court held that polygraph evidence is not admissible in any proceeding governed by the Oregon Evidence Code without a stipulation to admit it. *Cf. State v. Bass,* 76 Or App 396, 708 P2d 1207 (1985); *State v. Bennett,* 17 Or App 197, 521 P2d 31, *rev den* (1974) (polygraph evidence admissible only if stipulated). The court found that under proper conditions polygraph evidence may have some probative value and may, in some cases, be helpful to the trier of fact, but it held that that probative value was outweighed by concerns that it would interfere with the jury's duty to assess the credibility of

---

[2] The state contends that in *State v. Veley,* 37 Or App 235, 586 P2d 1130 (1978), *rev den* 285 Or 1 (1979), we considered an informant's successful completion of a polygraph test as one factor contributing to her veracity. The state misreads *Veley.* Although the victim-informant in that case did indeed successfully complete a polygraph test, her veracity was not in issue on appeal. The only issue was whether the information in the affidavit supporting the search warrant was stale.

witnesses and that its use would cause undue delay in trials. 297 Or at 417. It also concluded that a polygraph examiner's testimony interpreting the results of the test would violate the rule that no witness may pass on the credibility of another witness' testimony with respect to specific conduct. 297 Or at 442-44.

*Brown* does not control this case, because the provisions of the Evidence Code do not apply to the issuance of search warrants. OEC 101(4)(f). Furthermore, an affidavit supporting a search warrant is tested by much less rigorous standards than those governing the admissibility or weight of evidence at trial. *Spinelli v. United States, supra,* 393 US at 419; *State v. Diaz,* 29 Or App 523, 527, 564 P2d 1066 (1977). The concerns militating against the use of polygraph evidence in criminal trials are not present in the context of a magistrate's decision whether to issue a search warrant. The magistrate is presumably aware of the controversy surrounding polygraphy and is hence less likely than a jury to be overwhelmed by the results of a polygraph test. Obviously, the concern with undue delay is not present outside the context of a trial. Other courts have relied on the results of a polygraph test as a factor which may be used to establish an informant's credibility. *State v. Kasold,* 110 Ariz 563, 521 P2d 995 (1974); *Duckworth v. State,* 246 Ga 631, 272 SE2d 332 (1980); *but cf. State v. Anderson,* 41 Wash App 85, 702 P2d 481 (1985) (dictum, polygraph evidence alone not sufficient to establish informant's credibility). The authors of one empirical study specifically addressing the issue concluded that the polygraph can be a useful tool in evaluating information from police informants. Blum and Osterloh, *The Polygraph Examination as a Means for Detecting Truth and Falsehood in Stories Presented By Police Informants,* 59 J Crim L, Criminology & Police Sci 133 (1968). Judge Moylan, in his well-known article concerning *Aguilar* and *Spinelli,* states: "A lie detector test * * * would certainly have a bearing on the question [of an informant's credibility]." Moylan, *Hearsay and Probable Cause: An Aquilar and Spinelli Primer,* 25 Mercer L Rev 741, 758 (1974). We hold that a magistrate may properly consider the results of a polygraph examination in determining whether an unnamed informant is credible.

■    An informant's lack of a criminal record is also an appropriate consideration in establishing his veracity. In

*State v. Villagran,* 294 Or 404, 409, 657 P2d 1223 (1983), the court stated that the connection of the informant to the criminal world is relevant in evaluating veracity. *See also Yantis v. State,* 476 SW2d 24 (Tex Crim App 1972); *but see Caldarera v. State,* 504 SW2d 914 (Tex Crim App 1974) (lack of criminal record alone not sufficient to establish informant's veracity).

The results of the polygraph examination together with the lack of a criminal record adequately established B's veracity. We need not decide whether A's statements properly could have been considered in determining B's veracity.

Affirmed.