Argued and submitted January 14, decision of Court of Appeals and judgment of
circuit court are affirmed September 24, 1992

STATE OF OREGON,
*Respondent on Review,*

*v.*

WALTER LAWRENCE ESPLIN,
*Petitioner on Review.*

(CC 88C-21963; CA A66018; SC S38209)

839 P2d 211

Robert J. McCrea, Eugene, argued the cause and filed the petition for petitioner on review.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause and filed the response to the petition for respondent on review. With her on the response were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Mary H. Williams, Assistant Attorney General, Salem.

GRABER, J.

## GRABER, J.

The primary issue in this criminal case is whether defendant had the right, at the hearing on his motion to controvert, to attack the good faith, accuracy, and truthfulness of an unnamed informant whose statements were contained in the affidavit supporting a search warrant. The trial court ruled that defendant did not have the right to make such an attack, and the Court of Appeals affirmed without opinion. *State v. Esplin*, 107 Or App 383, 811 P2d 150 (1991). We also affirm.

### FACTS AND PROCEDURAL BACKGROUND

The affidavit in support of a warrant to search defendant's home contained the following facts: The affiant is a Salem police officer. In July 1988, an unnamed "confidential, reliable informant" told the affiant that defendant and defendant's girlfriend "Penny" used and sold marijuana and methamphetamines. In the past, the informant had provided the affiant with accurate information about several people who had used or sold controlled substances, had provided information that resulted in the arrest of four people for crimes involving controlled substances, and had participated in several "controlled buys." The informant agreed to cooperate with the affiant in an investigation of defendant and Penny. The informant participated in two controlled buys at defendant's home, one in July and one in August. On both occasions, the affiant took the informant to defendant's home and provided the informant with money to purchase marijuana. When the informant emerged from the house, he was bearing small quantities of marijuana. He advised the affiant that Penny had sold it to him and that he could return any time to buy more. The informant also reported seeing large quantities of marijuana inside the home. In addition, the informant claimed to have been in defendant's home within 72 hours before the request for a search warrant and to have observed a large quantity of marijuana inside the home at that time.

On the basis of that affidavit, a magistrate issued a warrant to search defendant's home. During the ensuing search, the police found and seized marijuana, hashish, methamphetamines, and numerous items of personal property.

Defendant was charged with four counts of delivering controlled substances. ORS 475.992. He moved to suppress all evidence seized in the search, ORS 133.673, raising several arguments. Pursuant to ORS 133.693, he also filed a pretrial motion to controvert the search warrant affidavit. ORS 133.693 provides in part:

"(1)   Subject to the provisions of subsection (2) of this section, in any proceeding on a motion to suppress evidence the moving party *shall be entitled to contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant* with respect to the evidence presented to establish probable cause for search or seizure.

"(2)   If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness." (Emphasis added.)

Specifically, defendant asked the court to "strike from the affidavit" all information or, in the alternative, some of the information received from the informant "on the ground that it was not made in good faith." He contended that the informant had lied to the affiant about what had happened in defendant's home. In support of that contention, he introduced Penny's affidavit and the testimony of a corroborating witness. In her affidavit, Penny stated that she had not sold marijuana to anyone on the days in question, but had merely shared her personal "stash" with a person who had cajoled her into doing so and insisted on leaving money. She also stated that no one had visited defendant's home within 72 hours before the request for the search warrant, as the informant claimed to have done.

At the suppression hearing, the trial court admitted and considered Penny's affidavit and the testimony of the corroborating witness, but only as evidence bearing on the affiant's good faith, accuracy, and truthfulness.[1]

---

[1] Evidence regarding the accuracy of the *information* may bear on the good faith, accuracy, and truthfulness of the *affiant*. For example, in *United States v. Dorfman*, 542 F Supp 345, 369 (ND Ill 1982), *aff'd sub nom United States v. Williams*, 737 F2d 594 (7th Cir 1984), the district court held that the defendant would be permitted to establish that the affiant knew that the informant was lying or

By examining the affiant, defendant also sought to establish that the informant had been acting as a "police agent" in the investigation of defendant. The prosecutor objected to that line of questioning as irrelevant. The trial court sustained the objection, ruling that, whether or not the informant was acting as a police agent, ORS 133.693, as interpreted in *State v. Hitt*, 305 Or 458, 464, 753 P2d 415 (1988), did not permit attacks on the good faith, accuracy, or truthfulness of any non-affiants. The court allowed defendant to make an offer of proof, however, in which defendant asserted that the informant "worked in conjunction with the police, was paid for his efforts and was working under their direction and instruction."[2]

The trial court held that defendant had not established a lack of good faith, accuracy, or truthfulness on the part of the affiant and denied defendant's motion to suppress evidence. The case was then tried to the court, which convicted defendant of three of the four counts. Defendant appealed. The Court of Appeals affirmed without opinion, and we allowed defendant's petition for review.

## ANALYSIS OF DEFENDANT'S CLAIMS

Our analysis proceeds in three steps. First, we consider the pertinent statute; second, we analyze defendant's state constitutional claim; and, third, we examine defendant's federal constitutional claim. *See State v. Holmes*, 311 Or 400, 813 P2d 28 (1991) (applying method of analysis); *Stelts v. State of Oregon*, 299 Or 252, 257, 701 P2d 1047 (1985) (describing method of analysis).

---

that the informant's lies were so blatant that the inclusion of the false information by the affiant was in reckless disregard of the truth. *See also State v. Harp*, 299 Or 1, 697 P2d 548 (1985) (affiant's omission of information could be evaluated in controversion hearing; in that instance the omitted information deprived the included information of probable cause).

[2] At oral argument, defense counsel elaborated on what his proof would have shown. Counsel stated that he would have established that the informant had worked with the police in several similar investigations (a fact also stated in the affidavit); that the police paid the informant for supplying information about defendant and others; and that the police took the informant to and from defendant's home and instructed the informant concerning the purchase of contraband (facts also summarized in the affidavit, which described "controlled buys").

## A. *ORS 133.693*

The text of ORS 133.693(1) and (2) appears above at p 299. In *State v. Hitt, supra,* 305 Or at 464, this court construed ORS 133.693 to allow a challenge to the good faith, accuracy, and truthfulness *only of affiants,* not of non-affiants:

> "We construe the words which were included, 'accuracy and truthfulness,' to refer solely to the *affiant's* accuracy and truthfulness. That interpretation is, as we noted, the plain and literal sense of the words. A criminal defendant may challenge an affiant's accuracy and truthfulness, as well as good faith, in reporting the statements and information contained within the affidavit. A criminal defendant may challenge, for example, whether an informant actually made a statement to the affiant or whether the affiant has correctly reported a statement.
>
> "*A criminal defendant may not challenge, however, the accuracy and truthfulness, as well as good faith, of non-affiants.* A criminal defendant may not controvert the accuracy and truthfulness of information conveyed by non-affiants or statements made by non-affiants." (Emphasis added.)

*See also State v. Coffey,* 309 Or 342, 348-49, 788 P2d 424 (1990) (holding that the "defendant may contest only the good faith, accuracy, and truthfulness of the *affiant* — and *not* that of the *informant"* under ORS 133.693, citing *State v. Hitt, supra* (emphasis in original)).

Defendant recognizes the rule announced by this court in *State v. Hitt, supra,* and *State v. Coffey, supra.* He contends, however, that, although ORS 133.693 does not allow him to challenge the good faith, accuracy, and truthfulness of the unnamed informant, Article I, section 9, of the Oregon Constitution,[3] and the Fourth Amendment to the Constitution of the United States[4] do. In *Hitt,* this court did

---

[3] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[4] The Fourth Amendment to the Constitution of the United States provides:

not address those constitutional issues, because the defendant had not raised them. *State v. Hitt, supra*, 305 Or at 464 n 5. In *State v. Coffey, supra*, the defendant's argument was also limited to a statutory one. 309 Or at 348. Defendant here does raise the constitutional issues, and he preserved them in the trial court, so we now address them.

### B. *Article I, Section 9*

■ We consider defendant's Article I, section 9, claim next. Defendant argues that the purposes of the warrant clause of Article I, section 9, would be undermined if he is not allowed to challenge, at the hearing on a motion to controvert, the good faith, accuracy, and truthfulness of an unnamed informant who, he contends, is "tantamount to [a] police officer[]."

A search is not "unreasonable" under Article I, section 9, if it is conducted pursuant to a validly obtained search warrant. *State v. Campbell*, 306 Or 157, 759 P2d 1040 (1988). The warrant clause of Article I, section 9, addresses the question of how a warrant is validly obtained. We begin our analysis of defendant's claim under the warrant clause by examining the purpose of that clause. The wording of the clause — its requirements that a warrant be issued only upon "probable cause" and that a warrant be "supported by oath, or affirmation" — suggests that the clause has a dual purpose.

First, the warrant clause protects an individual's Article I, section 9, right to be secure against unreasonable searches by circumscribing the behavior of the state actor who seeks permission to search for evidence. The requirement of an "oath, or affirmation" is meant to ensure that the applicant for a warrant is *subjectively truthful* in presenting information to the magistrate.

Second, the warrant clause protects the individual's Article I, section 9, right to be secure against unreasonable searches by requiring review of the application and issuance

---

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

of a warrant only by a neutral judicial officer. The requirement of "probable cause" is meant to ensure that the applicant for the warrant has an *objectively reasonable belief* in the application's accuracy. *See State v. Weist*, 302 Or 370, 376, 730 P2d 26 (1986) ("the function of the guarantee [in the warrant clause of Article I, section 9,] is to subordinate the power of executive officers over the people and their houses, papers, and effects to legal controls beyond the executive branch itself").

The parties appear to agree that those are the general purposes of the warrant clause. They disagree, however, about the scope of the inquiry that must take place in a controversion hearing[5] in order to achieve those purposes. Defendant argues that the purposes of the warrant clause cannot be effectuated unless a defendant is permitted, at the hearing on a motion to controvert, to attack the good faith, accuracy, and truthfulness of the affiant, fellow officers, *and* civilian informants who are "tantamount to police officers." *See State v. Thetford*, 109 Wash 2d 392, 745 P2d 496 (1987) (adopting that approach under a Fourth Amendment analysis).[6]

Defendant cannot prevail even under the test that he asks this court to adopt. This case involves garden-variety

---

[5] We note that there are procedures in addition to the controversion hearing that safeguard the interests protected by Article I, section 9, when an application for a warrant is based in part on information supplied by an unnamed informant. For example, under ORS 133.545(4), the police officer or district attorney applying for the warrant must support the application by an affidavit that, among other things, "set[s] forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained." In addition, ORS 133.703 requires the state to prove that the "confidential informant exists and is reliable." In view of the nature of defendant's constitutional arguments, the constitutional sufficiency of ORS 133.693 must be considered in the light of all the extant statutory procedures that can test an application for a search warrant that relies in part on information supplied by an unnamed informant.

[6] The state argues that ORS 133.693, which limits a defendant's inquiry at a controversion hearing to affiants — when considered together with the other statutory procedures mentioned in note 5, above — fully satisfies Article I, section 9. The state argues from the wording and purposes of the warrant clause that an inquiry concerning a non-affiant is not compelled at a controversion hearing. In the alternative, the state argues that an inquiry at a controversion hearing concerning the affiant and all other sworn officers suffices to serve the purposes of the warrant clause.

In view of our disposition of this case, we need not decide among the parties' proposed statements of the constitutionally required scope of inquiry at a controversion hearing. Each of the proposed statements has merits and flaws.

"controlled buys" by a paid citizen informant. Defendant's offer of proof asserted that the informant had provided information to the police on several occasions; that the police paid the informant for supplying information; and that the police took the informant to and from defendant's home and instructed the informant concerning the purchase of contraband. Those facts, without more, do not make the informant "tantamount to [a] police officer[]."

Defendant makes one additional argument under Article I, section 9, concerning the nature of probable cause to search. He asserts that, even if the state acted reasonably in obtaining the warrant, "[a] [search] warrant that is issued based upon false information is not issued 'upon probable cause,' " within the meaning of Article I, section 9. Defendant argues that false information cannot provide probable cause to search even if it is *objectively reasonable* for the affiant to believe that the information is true and even if the affiant *actually believes* that the information is true. That argument misconceives the nature of probable cause to search.

■ In *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), this court stated, in the context of defining probable cause to arrest:

> "Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonably in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience." (Emphasis in original.)

Defendant argues, in essence, that the objective component of probable cause to search means that the officer's belief must *later* be validated as correct and based on infallible information. The requirement of probable cause to search refers, however, to the time that the officer acts. At that time, the officer must subjectively believe that a crime has been committed and that a thing is subject to seizure, and the officer's belief need only be objectively reasonable *then*. In the context

of obtaining a warrant, the relevant time is when the officer seeks a warrant from the magistrate.

In summary, Article I, section 9, did not give defendant the right to challenge the good faith, accuracy, or truthfulness of the unnamed informant at the hearing on defendant's motion to controvert.

## C. *Fourth Amendment*

*Franks v. Delaware*, 438 US 154, 98 S Ct 2674, 57 L Ed 2d 667 (1978), is the germinal Fourth Amendment case on subfacial challenges to affidavits supporting search warrants. In *Franks*, the trial court did not allow the defendant to challenge the veracity of an affiant whose statements were contained in the affidavit supporting a search warrant. The Delaware Supreme Court affirmed, holding that, under Delaware law, a defendant could never challenge the veracity of an affiant's statements. Unlike Oregon, Delaware had no statute that permitted challenges to the affiant's veracity.

The Supreme Court of the United States reversed, reasoning that "a flat ban on impeachment of veracity could denude the probable cause requirement of all real meaning," by allowing the police to rely deliberately on false allegations to obtain warrants. *Franks v. Delaware, supra*, 438 US at 168. The Court held that, under the Fourth Amendment, a defendant was entitled to a hearing to attack the veracity of an *affiant* if the defendant could establish "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that the statement was essential to establishing probable cause. *Id.* at 155.[7] In essence, the Court required Delaware to follow the procedure that the Oregon legislature has provided in ORS 133.693.

Although *Franks* involved only the issue whether the defendant could attack the veracity of the *affiant*,[8] the

---

[7] In *United States v. Leon*, 468 US 897, 104 S Ct 3405, 82 L Ed 2d 677 (1984), the Court held that exclusion of evidence is not required when the evidence was obtained in execution of an invalid warrant but the police had reasonable grounds for believing that the warrant was properly issued; but the Court expressly declared that its opinion in *Leon* left intact the *Franks* rule permitting a defendant to challenge the affiant's veracity. 468 US at 923.

[8] The defendant in *Franks* conceded that, if the affiant had no reason to believe that the information was false, there was no Fourth Amendment violation. 438 US at 172 n 8.

Court did not foreclose the possibility that the Fourth Amendment might require an opportunity to attack the veracity of other governmental actors in some circumstances. The Court wrote that the deliberate falsity or reckless disregard for the truth must be "that of the affiant, not of any *nongovernmental* informant." 438 US at 171 (emphasis added). That phrasing does not necessarily distinguish between attacking the veracity of affiants and attacking the veracity of non-affiants, but instead hints that the relevant distinction is between governmental and nongovernmental actors. Other parts of the opinion support the same inference. For instance, the Court wrote that the necessary premise in one of its earlier cases had been "that police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Id.* at 163-64 n 6.

Although *Franks* was decided well over a decade ago, our research discloses that only two courts have considered, under the Fourth Amendment, the specific issue that we address here. After examining the reasoning in both cases, we reach the same conclusion under the Fourth Amendment as we did under Article I, section 9.

In *U.S. v. Smith*, 918 F2d 1501 (11th Cir 1990), *cert den sub nom Sawyer v. United States*, 112 S Ct 253 (1991), the Eleventh Circuit reasoned that *Franks v. Delaware, supra*, opened government agents to examination, after a proper showing, but shielded informants. The court held that *Franks* "nowhere implies that compensated civilian informants are to be open to examination by titling them government agents, and we decline to so extend it." 918 F2d at 1508.

The Supreme Court of Washington, on the other hand, allows such challenges. In *State v. Thetford, supra*, the court concluded that *Franks* applies to falsehoods of an informant if, under the entire circumstances of the case, the informant's actions were so involved with and controlled by the government that they constituted state action. The court emphasized that mere payment of an informant's fee was insufficient to constitute state action. 745 P2d at 499. The court concluded that the informant in that case was a police agent nonetheless, because he had been "expressly recruited and hired" to assist the police in their investigation "as a

professional agent," had quit his job in another state and moved to the place of investigation, was receiving living expenses for so doing, "was to receive a bonus or contingent fee if his services proved helpful," and was "closely supervised" by the police. *Id.* at 502.

Even if this court were to accept the test applied in *State v. Thetford, supra*, defendant would not prevail. As discussed above, the informant in this case had significantly fewer ties to, and was significantly less controlled by, the police than the informant in *Thetford*.

We conclude that the Fourth Amendment did not give defendant the right to challenge the good faith, accuracy, and truthfulness of the unnamed informant at the hearing on defendant's motion to controvert.

## CONCLUSION

In summary, the trial court did not err when it refused, at the hearing on defendant's motion to controvert, to allow defendant to attack the good faith, accuracy, and truthfulness of the unnamed informant whose statements were contained in the affidavit supporting a search warrant.[9]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[9] Defendant raises three other assignments of error. We have reviewed all of his arguments on those points and find them unpersuasive.